IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| LIBERTY CORPORATE CAPITAL LIMITED,<br><br>               Plaintiff,<br><br>    vs.<br><br>ANIMALS OF MONTANA, INC., a corporation; TROY HYDE, individually, RONALD CLOUTIER, individually and as Personal Representative of Benjamin Cloutier; and ADELLE CLOUTIER, individually,<br><br>               Defendants. | CV 14-54-BU-DWM-JCL<br><br><br>FINDINGS & RECOMMENDATION |

This declaratory judgment action comes before the Court on the parties'

cross-motions for summary judgment on the question of whether Plaintiff Liberty

Corporate Capital Limited ("Liberty") has a duty to defend and indemnify

Defendants Animals of Montana, Inc. ("Animals of Montana") and Troy Hyde

("Hyde") under a commercial general liability policy. The motions should be

1

granted in part and denied in part as set forth below.

## I.  **Background**

On November 4, 2012, Benjamin Cloutier ("Benjamin") was fatally mauled while cleaning a grizzly bear enclosure on the premises of Animals of Montana. Hyde is the founder and sole shareholder of Animals of Montana, which is a business that owns and trains exotic animals for use in photography, advertising and film.  At the time of Benjamin's death, Animals of Montana was insured under a Commercial Exotic Animal Owner's Claims-Made Liability Insurance Policy (the "Policy") through Certain Lloyd's Underwriters.  Liberty is one of the subscribing underwriters on the Policy.

Animals of Montana did not have worker's compensation coverage in place for its employees at the time of Benjamin's death.  Benjamin's parents, Defendants Ronald and Adelle Cloutier (the "Cloutiers") applied for and received death benefits from Montana's Uninsured Employer's Fund.  And in April 2014, the Cloutiers brought a wrongful death and survivorship action against Animals of Montana and Hyde in state court.  Animals of Montana and Hyde tendered the defense to the Policy's underwriters, who accepted subject to a reservation of rights.

In August 2014, Liberty, as the lead underwriter, commenced this

declaratory judgment against the Cloutiers, Animals of Montana, and Hyde (collectively "Defendants"). Liberty seeks a declaration that it has no duty under the Policy to defend or indemnify Animals of Montana and Hyde in the underlying state court action, which is ongoing at this time. Defendants answered, and Animals of Montana and Hyde asserted a counterclaim against Liberty for bad faith.

The parties have filed cross-motions for summary judgment on the question of whether Liberty has a duty to defend and indemnify Animals of Montana and Hyde in the underlying action. Liberty makes the threshold argument that it is entitled to summary judgment because Montana law prohibits indemnification of an employer who is uninsured for workers' compensation purposes, which means it can have no duty to defend or indemnify under the terms of the Policy. Liberty also maintains it has no duty to defend or indemnify the insureds because the Policy's injury to employee and worker's compensation exclusions clearly preclude coverage for the Cloutiers' claims. Defendants disagree with Liberty's interpretation of Montana law regarding indemnification of uninsured employers, and argue Liberty has a duty to defend and indemnify Animals of Montana and Hyde in the underlying action because the two exclusions Liberty relies on do not apply.

## II.    Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings.  *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing*

*Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## III. <u>Discussion</u>

It is important to note at the outset that the parties seek summary judgment on two distinct issues - the duty to defend and the duty to indemnify. The Montana Supreme Court has made clear that the duty to defend and the duty to indemnify are separate obligations.[1]

Fundamentally speaking, "[t]he duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract."

---

[1] Because jurisdiction in this case is premised on diversity of citizenship, the Court looks to the substantive law of Montana as the forum state for purposes of resolving the pending motions. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In addition, the parties have stipulated that Montana law governs this action. (Doc. 19, at 2).

*United National Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1269

(Mont. 2008). The duty to defend "arises when an insured sets forth facts that

represent a risk covered by the terms of an insurance policy." *United National*,

214 P.3d at 1269. Unless there is "an unequivocal demonstration that the claim

against an insured does not fall within the insurance policy's coverage, an insurer

has a duty to defend." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385

(Mont. 2004). While the duty to defend thus "arises where the alleged facts even

potentially fall within the scope of coverage,...the duty to indemnify does not arise

unless the policy actually covers the alleged harm." *Skinner v. Allstate Ins. Co.,*

127 P.3d 359, 363 (Mont. 2005) (quoting *Constitution Assocs. v. New Hampshire*

*Ins. Co.*, 930 P.2d 556, 562-63 (Colo. 1996)).

This means that "[w]here there is no duty to defend, it follows that there can

be no duty to indemnify." *Skinner v. Allstate Ins. Co.,* 127 P.3d 359, 363 (Mont.

2005) (quoting *Constitution Assocs.*, 930 P.2d at 562-63.). But "where there is a

duty to defend, there is not necessarily a duty to indemnify." *Skinner*, 127 P.3d at

363 (quoting *Constitution Assocs.*, 930 P.2d at 562-63). Even assuming, for

example, that a court concludes as a preliminary matter "that an insurer must

defend the insured, a fact-finder may later reach a decision on the disputed facts

and conclude that an insurer has no duty to indemnify." *Skinner,* 127 P.3d at 363.

If, on the other hand, the court can say as a matter of law that there is no duty to indemnify, then there is no duty to defend. *Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 478 (Mont. 2005).

A.    **Indemnification of Uninsured Employer**

Liberty begins with an argument that, if correct, would dispose of the parties' cross-motions for summary judgment in their entirety. Liberty maintains that Montana law prohibits indemnification of an employer who is uninsured for workers' compensation purposes, which means it can have no duty to defend or indemnify under the terms of the Policy.

Liberty argues that the Montana Supreme Court's decision in *State Farm and Casualty Company v. Bush Hog, LLC*, 219 P.3d 1249 (Mont. 2009), is controlling. As Liberty reads it, *Bush Hog* stands for the proposition that an employer who is uninsured for workers' compensation purposes may not seek indemnity from a third party.  In *Bush Hog,* a ranch worker died while using a post hole digger and tractor to do fencing work on the ranch. *Bush Hog*, 219 P.3d at 1251. The ranch was not enrolled in a workers' compensation plan at the time. *Bush Hog*, 219 P.3d at 1251. The worker's widow filed a survivorship and wrongful death action against the ranch, and after the case settled the ranch filed suit in federal court seeking contribution or indemnity from Bush Hog, the

manufacturer of the post hole digger.  *Bush Hog*, 219 P.3d at 1251-52.

On certification, the Montana Supreme Court held that "an uninsured employer is prohibited from bringing either a contribution claim or an indemnity claim against a third party after settling with the injured employee."  *Bush Hog*, 219 P.3d at 1255.  Applying the *Bush Hog* holding here, Liberty argues it cannot be required to indemnify Animals of Montana and Hyde for any damages awarded in the underlying action.

But because *Bush Hog* is materially distinguishable, its holding does not control the outcome here.  The uninsured employer in *Bush Hog* was asserting a common law claim for indemnity, and the equitable principles underlying such a claim were thus central the Court's holding.  *Bush Hog*, 219 P.3d at 1252.  Here, however, Animals of Montana and Hyde are seeking contractual indemnification from their commercial liability insurer.  Because the question of whether Liberty has a duty to indemnify its insureds in this case is a purely contractual one, *Bush Hog* and the equitable principles upon which the Court's holding was based are inapposite.

*Bush Hog* is also distinguishable based on the relationship, or lack thereof, between the uninsured employer and the entity from whom indemnification was sought.  The manufacturer of the post hole digger was a third party stranger to the

employer-employee relationship between the ranch and its injured employee.  The Court found it would not be equitable to require such a stranger to the employer-employee relationship to indemnify the employer for liability that could have been avoided if the ranch had provided workers compensation coverage for its employees.  *Bush Hog*, 219 P.3d at 1255.   Unlike the post hole manufacturer in *Bush Hog*,  Liberty has a contractual relationship with the employer seeking indemnity and is obligated to provide Animals of Montana and Hyde with liability coverage pursuant to the terms of the Policy.

In light of these distinctions, the public policy concerns articulated by the Court in *Bush Hog* are not as compelling here.  There is nothing in the public policy of Montana to prevent an insurer from contractually agreeing to provide injured employees with coverage that goes beyond the remedies available under Montana's statutory workers' compensation scheme.   Nor do public policy concerns prevent a commercial general liability insurer from agreeing, in exchange for a premium, to provide coverage for temporary workers even if the employer has not secured workers' compensation coverage for its employees.

While *Bush Hog* eliminates common law indemnity as a remedy for an uninsured employer seeking to recover from a third party stranger to the employer-employee relationship, it says nothing about the issue here, namely, whether an

uninsured employer may bring a contractual indemnity claim against its commercial liability insurer.  Because *Bush Hog* does not prohibit Animals of Montana and Hyde from seeking contractual indemnification, the Court turns next to the question of whether coverage for the Cloutiers' claims in the underlying action is precluded by the Policy's exclusionary language.

## B.    Exclusions from Coverage

It is well-established in Montana that "[t]he interpretation of an insurance contract presents a question of law." *Moodroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, ¶ 24 (Mont. 2008).  The Court must interpret the terms of the "insurance policy according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, ¶ 16 (Mont. 2008) (quoting *Stutzman v. Safeco Ins. Co. of America*, 945 P.2d 32, 34 (Mont. 1997).  In doing so, the Court "may not rewrite the contract at issue, but must enforce it as written if its language is clear and explicit." *Allstate Ins. Co.*, at ¶ 16.

If the terms of an insurance policy are ambiguous, however, that ambiguity must be strictly construed against the insurer and in favor of extending coverage. *Stutzman*, 945 P.2d at 34; *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2003).  "An '[a]mbiguity exists only when the contract taken as a whole or in its

wording or phraseology is reasonably subject to two different interpretations.'"

*Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, ¶ 25 (Mont. 1998).

Regardless of whether they are ambiguous, exclusions from coverage will be

narrowly and strictly construed against the insurer "because they are contrary to

the fundamental protective purpose of an insurance policy." *Revelation*

*Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, ¶ 46 (Mont.

2009). *See also Stutzman*, 945 P.2d at 36.

The Montana Supreme Court has made clear that "the party seeking the

benefit of a particular policy provision bears the burden of proving its

application." *Travelers Casualty and Surety Co. v. Ribi Immunochem Research,*

*Inc.*, 108 P.3d 469, 476 (Mont. 2005). This means that the insured bears the initial

burden of showing that a claim falls within an insurance policy's basic scope of

coverage, and the insurer has the burden of establishing that an exclusion applies.

*Ribi Immunochem*, 108 P.3d at 476. The burden then shifts to the insured to prove

that an exception to the exclusion applies. *Ribi Immunochem*, 108 P.3d at 476.

The basic insuring agreement in the Policy at issue here provides, in part,

that Liberty will "pay those sums that the 'named insured' becomes obligated to

pay as damages because of 'bodily injury' ... to which this insurance applies."

(Doc. 1-1, at 4). There does not appear to be any dispute that the claims in the

underlying action fall within this general coverage provision. The coverage provided by this insuring agreement is, however, subject to several exclusions – two of which are at issue on summary judgment. In particular, Liberty maintains that the Policy's injury to employee and worker's compensation exclusions unambiguously preclude coverage for the Cloutiers' claims in the underlying action. Defendants disagree, and argue that Benjamin was a temporary worker to whom the Policy's exclusions do not apply.

> 1.    <u>Injury to Employee Exclusion</u>

Liberty begins by invoking the injury to employee exclusion, which

provides in relevant part:

> It is hereby agreed and understood that this insurance does not apply to any bodily injury...sustained by any 'employee' including but not limited to independent contractor(s) and/or any sub-contractors &/or any volunteer(s) &/or any individual(s) auditioning for any job which is/are working on behalf of the insured in any capacity, under its direct supervision &/or care control &/or direction.

(Doc. 1-1, at 39) (capitalization deleted).

Liberty argues it has met its initial burden of establishing that this exclusion

applies because the undisputed facts show that Benjamin was an employee of

Animals of Montana at the time of his death. The Policy defines an employee as:

> any person hired &/or retained by the Named Insured and under the Insured's (permanent) direct supervision &/or custody &/or control &/or

direction including the Named Insured's current remuneration program(s) &/or scheme(s).  'Employee' also means a person in the service of another under any contract of hire, express or implied, oral or written, when and where the employer has the power or right to control and direct the 'employee' in the material details of how the work is to be performed for the Insured.

(Doc. 1-1, at 22).

Liberty argues the undisputed facts establish that Benjamin was Animals of Montana's employee because he was "a person in the service of another under a contract of hire" and Animals of Montana had "the power or right to control [him] in the material details of how the work [was] to be performed."  (Doc. 1-1, at 22).  Defendants do not dispute that Benjamin was acting in the service of Animals of Montana under a contract of hire at the time of his death, and that Animals of Montana had the right to control how his work was to be performed.  While Benjamin thus meets this portion of the definition on its face, the definition further specifies that:

'Employee' does not include any 'leased worker, a temporary worker, a volunteer, any independent contractor(s) &/or sub-contractor(s), or any type of auditioning personnel or any casual labor &/or any pick-up help.

(Doc. 1-1, at 22).

Identical language can be found in the following clause at the end of the Policy's multi-paragraph injury to employee exclusion:

Condition: ... "Employee' does not include any 'leased worker', a 'temporary worker', a 'volunteer', any 'independent contractor(s)' &/or 'subcontractor(s)', or any type of 'auditioning', personnel or any 'casual labor' &/or 'pick-up' help.

(Doc. 101, at 39) (capitalization deleted).

Defendants argue the undisputed facts establish that Benjamin was a temporary worker, which means he was not an employee as defined by the Policy and the injury to worker exclusion does not apply.[2]

Before considering Defendants' argument on the merits, the Court must address a threshold issue raised by the parties regarding the burden of proof. As noted above, the insured typically bears the burden of proving that an exception to an exclusion from coverage applies. *Ribi Immunochem*, 108 P.3d at 476. Liberty characterizes the language allowing coverage for temporary workers as an exception to the injury to employee exclusion, and takes the position that Defendants thus bear the burden of establishing its applicability. Defendants focus instead on the fact that the same temporary worker language is also part of

---

[2] Liberty takes the initial position that Defendants are judicially estopped from arguing that Benjamin was a "temporary worker" as defined by the Act because when Montana's Uninsured Employer's Fund awarded death benefits it found he was an "employee" for which Animals of Montana was required to have workers' compensation coverage. (Doc. 62, at 26). But because the question here is whether Benjamin was an "employee" as defined by the Policy, not whether he was an "employee" under the Act, Liberty's judicial estoppel argument is misplaced.

14

the Policy's definition of employee, and argue it remains Liberty's burden to demonstrate that the injury to employee exclusion applies.

The Court agrees with Defendants on this point. Liberty bears the initial burden of establishing that the injury to employee exclusion applies. Because the exclusion applies only to employees, and the term "employee" is defined to exclude temporary workers, Liberty must establish that Benjamin was an employee rather than a temporary worker for the exclusion to apply. While the same language allowing coverage for temporary workers also appears as a condition in the injury to employee exclusion, the condition has no substantive effect because it is no different from the Policy's definition of an employee. For the exclusion to apply in the first instance, Liberty must demonstrate that Benjamin fit within that definition. The burden of establishing that Benjamin was an employee, rather than a temporary worker, thus remains with Liberty.

The Policy does not define the term "temporary worker." Absent a policy definition, Liberty maintains the Court should look to Montana's Workers' Compensation Act ("the Act") for guidance. The Act defines a temporary worker as one "whose services are furnished to another on a part-time or temporary basis to fill a work assignment with a finite ending date to support or supplement a workforce in situations resulting from employee absences, skill shortages,

seasonable workloads, and special assignments and projects." Mont. Code Ann. §
39-71-116(40).

While the Montana Supreme Court has not yet addressed the issue, a
majority of courts have interpreted identical "furnished to" language to mean that
for a worker to be considered temporary, he must have been provided by a third-
party such as a temporary staffing agency. *See e.g. Brown v. Indiana Insurance
Company*, 184 S.W.3d 528, 537 (Ky. 2006)*; Northland Casualty Co. v. Meeks*,
540 F.3d 869 (8th Cir. 2008). Liberty maintains the Act's definition of "temporary
employee" is the only reasonable one in the employment context, and contends
that a sophisticated business entity like Animals of Montana would reasonably
understand that terms in a commercial general liability policy's injury to employee
exclusions are to be defined in accordance with applicable workers' compensation
law.

Liberty's argument is problematic for two reasons. To begin with, Liberty
cites no authority for the proposition that under Montana law, the terms in a
commercial general liability policy are to be construed from the viewpoint of a
sophisticated business entity, rather than that "of a consumer with average
intelligence not trained in the law or insurance business." *Newbury v. State Farm
Fire & Casualty Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021, 1025 (Mont. 2008).

Liberty's argument is also problematic because the entire line of cases it relies on, including *Brown v. Indiana Insurance Company*, 184 S.W.3d 528, 537 (Ky. 2006), is distinguishable. The court in *Brown* construed an injury to employee exclusion and the phrase "temporary worker" in accordance with that state's workers' compensation law. *Brown*, 184 S.W.3d at 537. Unlike the Policy at issue here, however, the policy in *Brown* – as well as the policies at issue in the line of cases cited by Liberty – specifically defined the term "temporary worker" using the same "furnished to" language found in the workers' compensation statutes. *Brown*, 184 S.W.3d at 534. It thus made sense for the court to conclude that the exclusion and definition of "temporary worker" had been "crafted in consideration of worker's compensation law" and should be construed accordingly. *Brown*, 184 S.W.3d at 537. The same approach is not necessarily called for here, however, because the term "temporary worker" is not defined in the Policy to mirror the definition found in the Act.

While the definition found in the Act is a reasonable one, Defendants offer an equally reasonable dictionary definition. Merriam-Webster defines "temporary" as "continuing for a limited amount of time: not permanent" or "intended to be used for a limited amount of time." Merriam Webster, *temporary*, http://www.merriam-webster.com/dictionary/temporary. Applying this definition,

a "temporary worker" is one whose employment is continuing for a limited amount of time, not permanent, or intended to be for a limited amount of time.

As does Liberty, Defendants take the position that the term "temporary worker" is clear and the definition they have proposed is the only reasonable one. As discussed above, however, the definition offered by Liberty is also reasonable. Because the term "temporary worker" is reasonably subject to two different interpretations, it is ambiguous and must be strictly construed against Liberty and in favor of coverage.

Were the Court to adopt Liberty's proposed definition, coverage would be unequivocally barred because there is no evidence that Benjamen was "furnished to" Animals of Montana by a third party, such as temporary staffing agency. As explained below, however, using the dictionary definition results in the possibility of coverage because there is a factual question as to whether Benjamin's employment was temporary.

Benjamin arrived by bus in Bozeman, Montana early on the morning of November 4, 2012, and was fatally mauled later that day while working for Animals of Montana. Benjamin had been employed by Animals of Montana previously, but had been working a construction job elsewhere for several months before he was hired again by Hyde. (Doc. 56, ¶; Doc. 56-1, at 5). According to

Defendants, the undisputed facts demonstrate that when Hyde rehired Benjamen in November 2012, he did so on a temporary basis. Hyde testified by affidavit that he was in California during the month of November working with three mountain lion cubs for an international commercial shoot. (Doc. 50-5, at 2). Hyde explained that he had arranged for Benjamin to work at Animals of Montana "for the month of November." (Doc. 50-5, at 2). Another Animals of Montana employee, Demetri Price, similarly testified by affidavit that the plan was for Benjamin to work there for the month of November. (Doc. 50-2, at 1). Price indicated that Benjamin had been laid off from his construction job for the month of November, and was going to work at Animals of Montana during that period. (Doc. 50-2, at 1).

While these statements support Defendants' argument that Benjamin had been hired on a temporary basis, Liberty has come forward with contradictory evidence suggesting that Benjamin was returning indefinitely. Before this lawsuit commenced, Hyde testified during a deposition before the Occupational Safety and Health Review Committee that Benjamin "was coming back for full-time employment." (Doc. 56-1, at 7). As Hyde put it, that is what he "was hoping was going to work out for me, is that he, you know, wanted to come back and wanted to stay full time" and that he would be there "for the long term." (Doc. 56-1, at 7).

Price similarly remembered Benjamin telling him that he was coming back to work for Animals of Montana for good and wanted to explore veterinary school. (Doc. 56, ¶ 33). As Price recalled it, Benjamin "wanted to have that as a more permanent thing in his future." (Doc. 56, ¶ 33).

These contradictory statements make the question of whether Benjamin was a temporary worker a disputed factual one. Unless another exclusion unequivocally applies, the fact that there is the potential for coverage if Benjamin is found to have been a temporary worker precludes summary judgment on the duty to indemnify but gives rise to a duty to defend.

2.    Workers' Compensation Exclusion

Liberty also moves for summary judgment based on the Policy's workers compensation exclusion, which states:

> Worker's Compensation / Employer's liability coverage is specifically excluded from this policy for any injury to any employee(s) &/or independent contractor(s) &/or volunteer(s).

(Doc. 1-1, at 29) (capitalization deleted).

Liberty first argues the fact that the Cloutiers' claims in the underlying action seek tort damages rather than workers compensation benefits should have no effect on whether the Policy's workers' compensation exclusion applies. While the Montana Supreme Court has yet to address the issue, Liberty points out that a

majority of courts have held that workers compensation exclusions may nonetheless apply where, as here, an employer is exposed to tort liability for failing to procure workers' compensation coverage. *See e.g. Brown*, 184 S.W.3d at 534-35.

But even assuming that Montana would follow the majority rule, Liberty admits that whether the Policy's workers' compensation exclusion applies here ultimately depends on whether Benjamin was a "temporary worker" excepted from the definition of "employee." (Doc. 62, at 29). The question is not whether Benjamin was an employee for workers' compensation purposes, but whether he was an "employee" as defined by the Policy. As discussed above, whether Benjamin was a temporary worker is a genuinely disputed issue of material fact.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court concludes that: (1) whether Benjamin was a temporary worker, such that coverage for the Cloutiers' claims would be available under the Policy, or an employee such that coverage would be precluded, is a genuine issue of material fact precluding summary judgment on the duty to indemnify, and; (2) because there is the potential for coverage if Benjamin is found to have been a temporary worker, Liberty has a duty to defend against the Cloutiers' claims in the underlying action. Accordingly,

IT IS RECOMMENDED that Defendants' motion for summary judgment be GRANTED to the extent it seeks a declaration that Liberty has a duty to defend Animals of Montana and Hyde against the Cloutiers' claims in the underlying action, and Liberty's cross-motion for summary judgment on the same issue be DENIED.

IT IS FURTHER RECOMMENDED that the parties cross-motions for summary judgment be DENIED to the extent they seek a declaration on Liberty's duty to indemnify.

DATED this 12th day of May, 2015

Jeremiah C. Lynch
United States Magistrate Judge